Good morning. May I please the Court? I'm Thomas Doyle from Bennett Hartman here in Portland. It's an honor to be here, and welcome to Oregon, Judge Lamberth. I wanted to present to you just some of the essential elements of this case. It presents as an alter ego case, but we don't have anything about alter ego in the case that's actually before you. This is about a positive assurance test under the well-worn doctrine of steelworkers. So essentially what we have here is a case where the judge, Judge Acosta, dismissed this case because he could not find a, decided that there was no interpretation of the, of the grievance procedure in which, under which he could find that it was appropriate to order arbitration. That test is extremely lenient and is favorable towards finding arbitration. This Court and all the courts of this country find that arbitration is the preferred method for resolving these types of disputes. Labor disputes. Labor disputes, absolutely. And that the labor disputes are, should go to arbitration unless there's no interpretation. It's not susceptible to an interpretation. The arbitration provision of the contract is not susceptible to an interpretation that would result in finding that arbitration is appropriate. That is an extremely low bar under which we should have been measured. However, the judge raised that bar impermissibly. Therefore, that's what this appeal is about. Now, I understand that there's a twist to it, that there's an added aspect in terms of a signatory, and that, but we believe this case is governed by McKinstry, and the McKinstry case is clear, that where you have a party that is obtaining benefits under a contract, under a collective bargaining agreement, that that party is entitled to utilize the arbitration provisions. McKinstry is clear that we need to use the arbitration provision. Roberts. Let me ask you this. What was the history? Was there prior disputes where the Local 40 was permitted to invoke the arbitration procedure on its own? There, I think that there has been a well-worn, it's a factual question, Your Honor, but I think that Local 40 has arbitrated many, many cases. Now, Local 40 is the one who pushed the case forward. I think Defendant. The question was, is there any history of Local 40 invoking the arbitration process? I believe there is in terms of invoking the arbitration process. I think what Defendant would argue is, well, it's not clear that they were invoking that on their own behalf or as an agent of the International. So I think that's where the dispute is. But quite honestly, in the past history, this issue has never come up where the employers said, Local 40, on whose behalf are you doing that? Are you doing it on your own behalf or otherwise? And I think it's clear that there's that. At least there's a susceptible interpretation that Local 40 was doing it on its own behalf. Has Local 40 ever arbitrated a case when the International Union opposed arbitration? I am not aware of that, and I don't think the record reflects that it would be opposed or they would be opposed. They do here. They do not. There is no – I don't think there is any evidence that the International – and this is a very important point, Your Honor, because the Local 13 case, which I think goes back to 1971, that was a case where the International was a defendant in that case, that they were being sued under a duty of fair representation claim. Here, the International is – was a nonparty to this and was taking no position in terms of the local proceeding. Well, they may not have taken any position in this case, but they seem to have settled out the dispute. Well, respectfully, I disagree because I think that that settlement agreement is extraordinarily clear with – to the opposite conclusion, that I think that that settlement, that's a memorandum of agreement. A memorandum of agreement specifically references different locals, so – and specifically references this very lawsuit. But it also – but it also says that that MOA is on behalf of all members. Well, it's certainly on behalf of all members of those locals. Of the International. Of the International. But it's specifically – I think if you're going to – Is it your position that Local 40 is not a member of the International? That is not my position. But I am – but I – All of your members are members of the International. That is absolutely true. And you're only here in this Court because of the membership of your members in the International. Absolutely. But again – And you weren't in this – your local was not in that underlying agreement. It's only the International and the members. It is only the International. So we're talking about the memorandum that settled, that said we're not going to file any more cases relating to these locals and to the International. No. So the argument would be – No. Back at the beginning, your coming into court is based on your membership. Our coming into court is based on – there's several ways in which we're appropriately bringing the lawsuit. One is that we are part of the International as a member organization of the International. Another aspect is that the collective bargaining agreement that we're here under refers to the locals. And then, in addition, that we are vindicating the rights of members who are members of the local and who also happen to be members of the International. So there's three different ways under which we get through the gates on that. Now, the question I think that we're going from that is, well, look, if you're going to be a – if you're saying you're a member, then look, that settlement also settled your claims. Right. That's – which I understand that would be – we get whipsawed a little bit on that. But absolutely. But absolutely, there's no question. You look at that settlement agreement, and that settlement agreement doesn't refer to us. It explicitly excludes. No, it doesn't explicitly exclude you. Through enumeration. It just doesn't mention you. But it's very clear that it's on behalf of members. But the enumeration – You can't say on the one hand that for one purposes Local 40 is a member, and for other purposes it's not a member. That doesn't make any sense. That's not going to go very far with me. Well, I understand that, but I think that's important. It's a question of contract interpretation, Your Honor. And that contract enumerates the – by the contract I'm referring to at this point is let's call it a settlement agreement. Right. Mr. Doyle, can I ask you a question? Yes, sir. There are three locals mentioned in that MOA. Yeah. 18, 4, and 12, I think. 40 isn't mentioned. Let me ask you this. Are there any other locals in the International Union besides the three mentioned and Local 40? There are no – well, there are many other locals that are not mentioned. And they're bound by the MOA. Well, they are not part of – there are many other locals of the International. Whether there's other locals that are party to a contract with PMA for clerks' locals, that's a different question altogether. Well, as to that question, are there any other locals besides the three mentioned in the MOA and 40 that are members of contracts with PMA? Within PMA that are the clerks, I believe that this list is inclusive of everyone except for Local 40. Now, I'm going beyond the record here, Your Honor, and testing my own knowledge, which probably is two strikes against me. The answer is there are only four locals of the International Union, the three mentioned and Local 40, that are members of a collective bargaining contract with PMA. That is not accurate, but what I would say is that they are relevant to the issues that are presented in this collective bargaining agreement and to the MOA, so that they list the locals whose rights are being adjudicated, let's say, through this MOA, excluding the one local that has a pending lawsuit, and refer to that pending lawsuit on the next page, saying, if that lawsuit is successful, then this is how we're going to handle it. So I think that's sort of a belt-and-suspenders indemnity, right? It's certainly susceptible to interpretation both ways. That, look, we're — and we would not — if they said Local 40 is — if Local 40 was listed there, and then they said, and if for some reason Local 40 goes off and keeps going with this lawsuit, then you're right. There's no question that that would just be a belt-and-suspenders. But it's more than a little. Kennedy. One more question on that issue of contract interpretation. Can you identify for me any of what in Chevron we called — the Supreme Court called the traditional canons of statutory interpretation which help your interpretation of the contract? Well, I think to the extent — here's my Latin being tested as well, sir. Expressio unias? What's that? Are you talking about expressio unias? Exactly. Essentially what we have is that we have an enumerated list here in which there's — that someone's being left off that list. This is, again, interpreting the MOA. But what about the general language of all our members? All our members? You know, again, we have here a balancing. And this was a bench trial. So the judge, Judge Acosta, was certainly entitled to weigh. But what we also have is a positive assurance test that there has to be no interpretation of this collective bargaining agreement and the MOA that's susceptible to an interpretation that would get us to an arbitrator. That is the test. It's not — I don't have to win in terms of proving by preponderance of the evidence. I have to be able to establish that there's an interpretation that gets me there. That's for an arbitrator at that point. That's why we should not have lost. I'm — I had to not reserve at the beginning of my argument, but I will reserve the remainder. But I'm glad to answer any further questions. Okay. That's fine. Thank you, sir. Good morning, Your Honors. My name's Kirk Peterson. I'm appearing on behalf of Columbia Grain. May it please the Court, Mr. Doyle. The issue that we're here today about is not about a parent corporation allegedly trying to unlawfully evade the contractual obligations of its defunct subsidiary. Where we're here today, and at the heart of this matter, is a local union that is trying to circumvent, every which way but loose, its international organization, who was the Your Honors, as a matter of law, they may disagree with the actions and decisions of the international, but they're bound as a matter of law by those decisions and agreements that they make. So here, the district court correctly found. Again, there's no — local authority assigned no errors to the findings of fact, only to three legal conclusions. But the district court correctly found and concluded that local authority had, under the applicable collective bargaining agreement, not the memo of understanding, but the contract that they're suing under to compel arbitration, that local authority had no contractual right to independently compel arbitration under the clear terms of that agreement. They weren't signatory. They certainly weren't signatories to the agreement. Correct. I would agree with that. They're not signatory. Well, here, Your Honor, you asked about canons of construction. I don't think we get to canons of construction, because I think that's somewhere down the road, if there's ambiguous language. Here, it's clear. The parties explicitly — and the parties being the International and the Pacific Maritime Association, they explicitly defined in the preamble, or the recital, depending on how you couch that, is who the parties were. So we showed in supplemental excerpts of record, page 21, the recital expressly defines the I think you have a pretty good argument there, but why aren't they third-party beneficiaries? They could be. The local. The local. They could be third-party beneficiaries in other respects, but not when the analysis, the contractual interpretation, not only of Local 13 case that this Court previously held. That's a little bit different. The context is different, but it was still a contractual interpretation of not only who are the parties to the agreement, and that's the International, not the local. I'm not going to really quarrel. I'm not going to quarrel with you on who's a party. Okay. My question was, why aren't they third-party beneficiaries? Well, they may be, but they don't have — My question is, are they? The International is probably acting. There is a — Is that a hard question? I don't know. I mean, why just — are they third-party beneficiaries or not? I mean, what do you think? They may be. Okay. So that means they are a third-party beneficiary? I think this is more of a — What I kind of got out of this, after reading everything and looking at the agreements, was, you know, they probably are third-party beneficiaries, right? But their problem is, is they're kind of stuck with that MOA. Yes. Right? Yes. Isn't that what the situation is here? I think so. The district court certainly agreed. Let me ask you this. I have one other question. I asked counsel there. Is the local a member for purposes of the agreement? Absolutely. And that's in the record. They are members of the International. There's no question about that. They're bound, as a matter of law, by the agreements entered into the International. So when you read the MOA, a fair reading of it encompasses the local. Yes. Correct. Why were the three locals named then? They were the ones who were doing the, if you will, grain handling. At this facility, you had the ship-side work. That's part of what Local 40 used to do. And then you had the elevator-type work. But what was at the heart of those negotiations was the International previously had agreed with another competitor, EGT, that we don't need supercargoes anymore. That's who's represented by Local 40. They're not needed in that process. And, therefore, EGT was allowed to no longer have to contract with a stuvidoring company. Rather, it allowed those grain handlers, well, EGT originally, to do that work themselves. And they contract with the longshoremen, the foremen. And then there's one other, 4, 8, and 19. I forget. I think 19 is the foreman. And that's exactly what the International ultimately did in this case. After a lengthy strike, they agreed to contract with what's called the grain handlers. And that was a handful up and down the coast of elevator operators, that they could do that ship-handling work, the ship-side work, themselves without hiring a stuvidoring company. And there was no contractual requirement to use what's called a supercargo or a clerk. So in the memorandum of agreement, though, we're not talking about the members of those locals. The International, who is the sole party to the agreement that's being sued under, you couldn't ask for more clear language in consideration for a number of things. It's a separate agreement. The capital U Union, which is the International and those three locals collectively, capital U Union, waived, released, and discharged all of the employers, collectively and individually, from any and all claims that had arisen prior to this and the lawsuit had arisen prior to it. And they did it on behalf of all, the International did it on behalf of all their members. All members. All members. Which has to include all the members of local. And the record here, it's conceded that they're members of the International. So even if the district court, I don't think the district court did, I think the district court was correct in finding that they weren't a party to the grievance, or even if they were a third-party beneficiary, it didn't matter, because ultimately, maybe it's that if they did have third-party beneficiaries, independently, that's the key, independently, without the International. Let me ask you one other thing. Okay. So in the brief, they talk about the side letter agreement. Yes. What do we do with that? Well, counsel says that it specifically excludes local authority from them. I see no reading of that that gets us to that point. It's an acknowledgment that this lawsuit is pending. The district court made findings that are uncontested about the context of what happened, is that the International president said, I don't know if we can control local authority anymore. I don't know if they're going to bound, they're going to comply with the agreements that we just put a pin to. So it acknowledges what would happen if local authority was ultimately successful in gaining jobs back, that the International agreed no longer needed to be done here. And that would be that Local 8 would lose a position. Correct. So you have a head-busting between the International and Local 40 and Local 8. And Local 40. One last argument that I'd like to make, and that's on what standard is here. And counsel would leave this court to believe that he's only got to come up with some interpretation, whether it's reasonable or not. I disagree with that analysis of where we're here. It's crystal clear, well established, that arbitration is a matter of consent. It's purely a contractual matter. And so when the court is faced with a motion to compel, there's a threshold judicial. It's not for the arbitrator, it's for a judicial inquiry on whether the parties agreed to arbitrate. It's also clear, including the case that counsel cited, that arbitration cannot be invoked by someone who's neither a party and doesn't otherwise possess the contractual right to do so. So in this context, Local 40 had the burden to show that the signatories intended to give Local 40 an independent right to compel arbitration, even if the International is not a party to it, ultimately later expressly waived it. So those are substantive issues, not procedural arbitrability for an arbitrator to decide. And what here is where I think on the third party beneficiary, to come back to that, it's in the definitions of the parties, and it's the International that's used as a capital U. And counsel has already conceded in his opening brief that in that grievance process, the Local acts as an agent of the International. So that it's, even though the context from Local 13 case from a number of years ago, the legal context was somewhat different. It's the same contractual interpretation that both based on the parties to the agreement and how the grievance and arbitration process works, that it's the International who has the deciding factor on whether to go to arbitration or not. Not the Local. Okay. Thank you, Your Honor. Thank you. Hi again. I just want to address one thing, which is obviously I think the discussion here, I agree that we're a third party beneficiary. I'm glad we have that common ground. The question is, is going to be then, in terms of the memorandum of agreement, that memorandum of agreement, the SCR 17. Not necessarily, Mr. Doyle. The language of the contract itself puts the question whether, even if you are a third party beneficiary, are you authorized to request arbitration by the terms of the contract or of the only person that could request arbitration, the International? Well, I think — Isn't that what Local 13 decided? Well, I think McKinstry, which distinguishes Local 13 very well, addresses that very issue. And McKinstry says before the — this is relating to non-signatories. So even if you're a non-signatory, it says before the presumption of arbitrability can apply, the non-signatory party must show that the signatory has intended it to derive benefits from the agreement. So once you show that the local was intended to derive benefits from the agreement, which I think there's no — But the language in Local 13 was very similar in the contract to the language here, and they said it was a clear intent that the local did not have standing to demand arbitration. And I'm not sure why that case is brought only under the FAA, or the Federal Arbitration Act, but it is. And it specifically, Local 13 specifically, references that you have to be a party under the clear terms of the statute to the contract. And so — It was a case involving a challenge to vacate — Exactly. — an arbitration agreement, which is different. Absolutely, Your Honor. I apologize for interrupting. But against the international itself, saying we don't want to live, that the same motives or same policy applies. Arbitrability should control. Arbitration should control. There, it was a local trying to undo an arbitration that the international brought. That is a very different set of facts. Here, if it's susceptible to interpretation and the local that's trying to bring the case is, from the face of the contract, at least going to receive a benefit, which I think we're in agreement on, that the local 40 was going to receive a benefit from the collective bargaining agreement that was entered into on its behalf. We meet the standard. We meet the standard both in terms of the straight-up question of arbitrability and whether we get in under McKinstry. We meet the standard under third-party beneficiary. We have a place at that table. The question, I think, is going to be then, did the international somehow on our behalf, on local 40's behalf, waive that right? There is a question of waiver. There is a question of agency. And you are left with a memorandum of agreement. And that memorandum of agreement specifically references locals 4, 8, and 19. And the next page references saying that there's a lawsuit. If there was any intent to waive the rights of a local, one would expect that local would be referenced in there in some way, shape, or form. That's a question of contract interpretation. But the overwhelming language within those memorandums indicates that it's not. And I don't think the fact that members are gets you there because it's a question of contract interpretation of a waiver provision or of a settlement.  Excuse me, sir? What could all members mean if it doesn't mean all members, including yours? What it means is members of the international that are referenced here in terms of those local 14. Except yours? No more than if it had, if one member, if I'm an international member, an individual member, and Columbia Grain runs over, you know, an agent runs over my foot, I don't think that the international had the ability to waive my claims against Columbia Grain. I don't think Columbia Grain would be here today against an individual member or something unrelated. It relates to the interpretation of the settlement agreement. And Columbia Grain is trying to say, look, this settlement agreement waived your rights, local 40, who were not allowed at that table and were not party to that agreement, somehow in the international way of those rights. We don't think it gets us there. At the very least, we get to an arbitrator to decide that very issue. I have nothing further unless there's further questions. Thank you. Thank you very much. Thank you very much. Interesting case. The matter is submitted at this time.
judges: Paez, Bea, Lamberth